Brent H. Blakely (SBN 157292)
bblakely@blakelylawgroup.com
Jamie Fountain (SBN 316567)
jfountain@blakelylawgroup.com
Iain Hill (SBN 336825)
ihill@blakelylawgroup.com
**BLAKELY LAW GROUP**
1334 Parkview Avenue, Suite 280
Manhattan Beach, California 90266
Telephone: (310) 546-7400
Facsimile: (310) 546-7401
**Attorneys for Plaintiff**
**Deckers Outdoor Corporation**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION, a Delaware Corporation,<br><br>               Plaintiff,<br><br>       v.<br><br>STAND OUT FOR GOOD, INC., a Tennessee Corporation; and DOES 1-10, inclusive,<br><br>          Defendants. | CASE NO.: 2:24-10995<br><br>**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF:**<br><br>1. **TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT (CLAIM 1)**<br><br>2. **FALSE DESIGNATION OF ORIGIN & FALSE DESCRIPTION UNDER THE LANHAM ACT (CLAIM 2)**<br><br>3. **TRADE DRESS INFRINGEMENT UNDER THE LANHAM ACT (CLAIMS 3-4)**<br><br>4. **TRADE DRESS INFRINGEMENT UNDER CALIFORNIA COMMON LAW (CLAIM 5)**<br><br>5. **UNFAIR COMPETITION IN VIOLATION OF CAL. BUS. & PROF. CODE § 17200 *et seq.* (CLAIM 6)**<br><br>6. **UNFAIR COMPETITION UNDER CALIFORNIA COMMON LAW (CLAIM 7)**<br><br>7. **PATENT INFRINGEMENT (CLAIM 8)**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

Plaintiff Deckers Outdoor Corporation ("Deckers" or "Plaintiff") for its Complaint against Defendant Stand Out for Good, Inc. doing business as Altar'd State, and Arula ("Altar'd State" or "Defendant") and DOES 1-10 (collectively "Defendants") alleges as follows:

## JURISDICTION AND VENUE

1.     This action arises out of Defendant's complicit and unlawful acts constituting trademark infringement, trade dress infringement, and unfair competition in violation of the Lanham Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.* (the "Lanham Act"), patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq.* and related claims for violations of statutory and common law of the state of California.

2.     This Court has subject matter jurisdiction over the federal claims asserted in this action under 28 U.S.C. §§ 1331 and 1338(a) and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because they are so related to the federal claims that they form part of the same case or controversy.

3.     This Court has personal jurisdiction over Defendant because Defendant conducts continuous and systematic business in this district, placed infringing products in the stream of commerce directed to residents of this district, derived commercial benefits from the sale of infringing products and caused injuries to Plaintiff within the Central District of California.

4.     Venue is proper under 28 U.S.C. §§ 1391(b)-(c) because a substantial part of the events or omissions giving rise to the claims alleged occurred in this judicial district and Plaintiff is located and has been injured in this judicial district, and 28 U.S.C. § 1400(b) because Defendant committed acts of infringement in this judicial district.

## THE PARTIES

5.     Plaintiff Deckers Outdoor Corporation is a corporation organized and existing under the laws of the state of Delaware with an office and principal place of

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

business located in Goleta, California. Deckers designs and markets footwear products under a number of well-known brands, including the UGG® brand and products covered by the intellectual property asserted in this Complaint.

6. Upon information and belief, Defendant Stand Out For Good, Inc. doing business as Altar'd State and Arula is a corporation organized and existing under the laws of the state of Tennessee with its office and principal place of business located at 550 Frank Gardner Ln. Knoxville, TN 37932.

7. Deckers is informed and believes that, together with Altar'd State, other individuals and entities currently named as DOES 1-10 may also be responsible in one manner or another for the wrongs alleged herein, in that at all relevant times, each one (including Altar'd State) was the agent and servant of the others and acting within the course and scope of said agency and employment. These other individuals and entities are sued under fictitious names DOES 1-10 because their true names and capacities are currently unknown to Deckers. Deckers will seek leave to amend this Complaint when the true names and capacities of DOES 1-10 are ascertained.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### A. Deckers' UGG® Brand and Products

8. Deckers has been engaged in the design, distribution, marketing, offering for sale, and sale of footwear since 1975. Deckers owns and markets its footwear products under several distinctive trademarked brands, including UGG®, Koolaburra®, Teva® AHNU®, and Hoka®.

9. Since its founding in 1979, Deckers' UGG® brand has become one of the most well-recognized premium comfort-leisure shoe brands in the United States and Deckers has sold high-quality footwear, apparel, and other products which prominently display its highly-recognizable and federally-registered trademarks, including UGG® (the "UGG Mark").

10. Since 1979, the popularity of the UGG® brand and footwear sold under the UGG Mark has steadily grown in the U.S. and around the world. UGG® has been

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

and remains highly coveted today by consumers as one of the most popular and recognizable symbols of luxury and style.

11. For example, in 2000, UGG® boots were featured on Oprah's Favorite Things® where Oprah emphatically declared on national television how much she "LOOOOOVES her UGG boots." Since then, the popularity of UGG® footwear has grown exponentially, with celebrities such as Gigi Hadid, Rihanna, and Emily Ratajowski among a myriad of others regularly seen wearing UGG® footwear, including the UGG® Tazz and UGG® Classic Ultra Mini.

12. The world-wide recognition as a "premium" brand and the overwhelming popularity of the UGG® brand is due to Deckers' continuous commitment to quality and excellence. Today, Deckers' footwear products under the UGG® brand are widely available and sold to consumers in every state, including California, through UGG® Stores, authorized retailers on the internet and brick-and-mortar stores, as well as on the internet at www.ugg.com.

13. Deckers has continuously sold and marketed UGG® products in the United States under a variety of registered trademarks, including the UGG Mark for many years. As a result of its long- standing use, Deckers owns common law trademark rights in its trademarks including the UGG Mark. Attached hereto and incorporated herein as **Exhibit 1** are true and correct copies of Deckers' registered U.S. trademarks for the UGG Mark and stylized variations thereof (collectively the "UGG Trademarks" in connection with footwear.

14. UGG® products typically include at least one of the federally registered UGG Trademarks and often Deckers' UGG Trademarks are displayed in more than one location on a single product (e.g., interior label, lining, or external tags).

15. Deckers' registered U.S. trademarks for the UGG Trademarks, including the UGG Mark, are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065.

16. The registrations for the UGG Trademarks, including the UGG Mark,

constitute prima facie evidence of their validity and of Deckers' exclusive right to use the UGG Trademarks, including the UGG Mark, pursuant to 15 U.S.C. § 1057(b). The UGG Trademarks have been used exclusively and continuously by Deckers and have never been abandoned.

**B. Defendant's Infringing Activities**

17. This lawsuit arises from Defendant's design, manufacture, importation, distribution, advertisement, marketing, offering for sale, and sale in the U.S. of certain footwear products that infringe upon Deckers' "Tazz Trade Dress", "Classic Ultra Mini Trade Dress", and U.S. Patent D927,161 (the "'161 Patent") (the "Accused Products") and Deckers' rights to the UGG Mark.

**1. Defendant's Infringement of the UGG Mark**

18. Upon information and belief, Defendant is engaged in the design, manufacture, importation, distribution, advertisement, marketing, offering for sale, and sale of a wide range of apparel and footwear under its Altar'd State brand and Arula brand through authorized retail locations, and through its website, altardstate.com (the "Altar'd State Website") and arula.com (the "Arula Website"), that is accessible to customers nationwide, including to those within this judicial district.

19. Defendant has used the UGG Mark and similar designations in connection with its sale, marketing, and advertising of competitive products, at least through the use of such marks in Internet search engine advertising on the Altar'd State Website, when Defendant has no rights to use such mark and such mark is not descriptive of Defendant's products.

20. The Altar'd State Website includes on each of its pages a product search bar that enables internet users to perform a targeted search with the Altar'd State Website. When the word "UGG" is typed in the product search bar alone or in connection with a search phrase on the Altar'd State Website, the internet user is automatically redirected to footwear that look confusingly similar and/or nearly identical to authentic UGG® products, including the Accused Products.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

21.     For example, even as recently as December 5, 2024, entering the search term "UGG" into the search bar on the Altar'd State Website, as shown in Image 1 below, automatically retrieves, both in the search bar and after completing a search, the Accused Products, highly-similar to products sold by Deckers under its UGG® brand,



*Image 1.* The internet user enters the search term "UGG" into the search bar on the Altar'd State Website and is suggested the Accused Products.



*Image 2.* When going through with the search, the customer is again presented with the Accused Products, highly-similar to authentic UGG® products.

22.     Defendant's offering of products in connection with the UGG Mark improperly trades off the goodwill Deckers has established in the UGG Mark to improperly attract consumers to Altar'd State's competitive products.

23.     Consumers familiar with the UGG® brand and its products looking for the same by entering the search term "UGG" on the Altar'd State Website would likely mistakenly believe that the confusing similar products retrieved as a result thereof are somehow endorsed, sponsored, or affiliated with Deckers.

24.     Furthermore, once a consumer types in "UGG" on the Altar'd State Website search and retrieves the results, even if the consumer recognizes that the products offered are not authentic UGG® products, the consumer may purchase the confusingly similar products from Altar'd State. In this manner, Deckers is harmed through the weakening association of the UGG Mark with Deckers' UGG® products.

### 2.     Defendant's Infringement of the Tazz Trade Dress

25.     Upon information and belief, Defendant imported into the U.S., advertised, marketed, supplied, distributed, offered for sale, and/or sold the Accused Products, including the Altar'd State brand "Cloud Slipper" and "Mini Cloud Slippers" through the Altar'd State Website and Arula brand "Cloud Wide Width Slippers" through the Arula Website, and through other retailers currently unknown, including DOES 1-10. An exemplar of the of the Accused Products is shown in the chart below, side by side with the infringed UGG® Tazz – the embodiment of the Tazz Trade Dress.

  

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF





**Defendant's Altar'd State brand Cloud Slipper**

**Defendant's Arula brand Cloud Slipper Wide Width Slipper**

**UGG® Tazz**

### 3. Defendant's Infringement of the Classic Ultra Mini Trade Dress and U.S. Patent No. D927,161

26. Upon information and belief, Defendant imported into the U.S., advertised, marketed, supplied, distributed, offered for sale, and/or sold the Accused Products, including the Altar'd State brand "Breckenridge Mini Boot" and "Breckenridge Mini Fur Boots" through the Altar'd State Website, and through other retailers currently unknown, including DOES 1-10. An exemplar of the of the Accused Products is shown in the chart below, side by side with the infringed UGG® Classic Ultra Mini – the embodiment of the Classic Ultra Mini Trade Dress – and the '161 Patent:





**UGG® Classic Ultra Mini**

**Defendant's Accused Product**

**'161 Patent**

27. Upon information and belief, Defendant is a competitor of Deckers, and Defendant introduced the Accused Products into the stream of commerce in an effort to

exploit Deckers' goodwill and the reputation of the UGG® Tazz and UGG® Classic Ultra Mini.

28.     Defendant is not an authorized retailer of UGG® products.

29.     Deckers has not granted Defendant a license to practice nor given Defendant any form of permission to use Deckers' trademarks, trade dresses, or patents, including Deckers' Tazz Trade Dress, Classic Ultra Mini Trade Dress, or the '161 Patent.

30.     Upon information and belief, Defendant may have sold additional products that infringe upon Deckers' design patents and/or trade dresses. Deckers will seek leave to amend as additional information becomes available through discovery.

31.     Upon information and belief, Defendant has acted in bad faith and Defendant's unlawful acts have misled and confused, and were intended to cause confusion, or to cause mistake, or to deceive consumers as to the affiliation, connection, or association of the Accused Products with Deckers, and/or the origin, sponsorship, or approval of the Accused Products by Deckers.

## FIRST CLAIM FOR RELIEF

### (Trademark Infringement - 15 U.S.C. § 1114)

32.     Deckers incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

33.     The UGG Mark is nationally recognized, including within the Central District of California, as being affixed to goods and merchandise of the highest quality and originating from Plaintiff.

34.     The registrations of the UGG Mark are in full force and effect, and Deckers has authorized responsible manufacturers and vendors to sell merchandise bearing the UGG Mark.

35.     Defendant's unauthorized use of an exact copy of the UGG Mark in interstate commerce and advertising to promote goods that are not UGG® products but which instead are counterfeit, infringing and/or unlicensed products constitutes false

designation of origin and a false representation that the goods are manufactured, offered, sponsored, authorized, licensed by or otherwise connected with Plaintiff or come from the same source as Plaintiff's goods and are of the same quality as that provided under Plaintiff's UGG Mark.

36.     Defendant's use of the UGG Mark is without Plaintiff's permission or authority and is in total disregard of Plaintiff's rights to control its trademarks.

37.     Defendant's infringing activities are likely to lead to and result in consumer confusion, mistake or deception, and are likely to cause the public to believe that Plaintiff has produced, sponsored, authorized, licensed or is otherwise connected or affiliated with Defendant's commercial and business activities, all to the detriment of Plaintiff.

38.     Upon information and belief, Defendant's acts are deliberate and intended to confuse the public as to the source of Defendant's goods or services and to injure Plaintiff and reap the benefit of Plaintiff's goodwill associated with the UGG Mark.

39.     As a direct and proximate result of Defendant's willful and unlawful conduct, Plaintiff has been injured and will continue to suffer irreparable injury to its business and reputation unless Defendant is restrained by this Court from infringing Plaintiff's UGG Mark.

40.     Plaintiff has no adequate remedy at law.

41.     In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting Defendant from using Plaintiff's UGG Mark, or any marks confusingly similar thereto, for any purpose, and to recover from Defendant all damages, including attorneys' fees, that Plaintiff has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendant as a result thereof, in an amount not yet known, as well as the costs of this action and up to treble damages pursuant to 15 U.S.C. § 1117(a).

## SECOND CLAIM FOR RELIEF

**(False Designations of Origin & False Descriptions - 15 U.S.C. § 1125(a))**

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

42.     Deckers incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

43.     Defendant's unauthorized use of Plaintiff's UGG Mark in connection with the advertisement and sale of its own proprietary merchandise, as well as the sale of similar and competing goods in interstate commerce constitutes false designation of origin and a false representation that the goods are manufactured, offered, sponsored, authorized, licensed by or otherwise connected with Plaintiff or come from the same source as Plaintiff's goods when in fact they do not.

44.     Defendant's use of Plaintiff's UGG Mark is without Plaintiff's permission or authority and in total disregard of Plaintiff's rights to control its trademarks.

45.     Defendant's activities are likely to lead to and result in consumer confusion, mistake or deception, and are likely to cause the public to believe that Plaintiff has produced, sponsored, authorized, licensed or is otherwise connected or affiliated with Defendant's commercial and business activities, all to the detriment of Plaintiff.

46.     Plaintiff has no adequate remedy at law.

47.     In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting Defendant from using any of Plaintiff's registered marks, including the UGG Mark, or any marks confusingly similar thereto, and to recover all damages, including attorneys' fees, that Plaintiff has sustained and will sustain, and all gains, profits and advantages obtained by Defendant as a result of its infringing acts alleged above in an amount not yet known, the costs of this action and up to treble damages pursuant to 15 U.S.C. § 1117(a).

### **THIRD CLAIM FOR RELIEF**

### **(Trade Dress Infringement - 15 U.S.C. § 1125(a))**

48.     Deckers incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

49.     In 2021, Deckers introduced the UGG® Tazz, marketed and featuring the

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

design elements protected under the "Tazz Trade Dress." The Tazz Trade Dress is unique and inherently distinctive, and comprised of the following non-functional elements:

     a.  An embroidered braid around the opening of the upper;

     b.  A raised prominent seam on the front part of the upper running longitudinally down the center of the upper;

     c.  A raised and rounded dome shaped toe;

     d.  Brushed suede-like exterior; and

     e.  A thick, platform outsole.

50.    The Tazz Trade Dress, which is a composite of the above-referenced features, is non-functional in its entirety, visually distinctive, and unique in the footwear industry; examples of its distinctive appearance as a whole are shown in the photographs below:

  

51.    The design of the Tazz Trade Dress is neither essential to its use or purpose, nor does it affect the cost or quality of the shoe. There are numerous other designs available that are equally feasible and efficient, none of which necessitate copying or imitating the Tazz Trade Dress. The combination of features comprising the Tazz Trade Dress provides no cost advantages to the manufacturer or utilitarian advantages to the consumer. These features, in combination, serve only to render the UGG® Tazz, the embodiment of the Tazz Trade Dress, as a distinct product originating solely from Deckers.

52.    The UGG® Tazz, the embodiment of the Tazz Trade Dress, is one of the

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

most well-recognized and commercially successful styles of UGG® brand of footwear products, having been featured in many of Deckers' advertising and promotional materials as well as in various trade publications. The UGG® Tazz has received a large volume of unsolicited media attention, for example, through various celebrities seen wearing UGG® Tazz and graced the pages of many popular magazines nationwide and internationally.

53. Deckers has spent substantial time, effort, and money in designing, developing, advertising, promoting, and marketing the UGG® brand and its line of footwear embodying the Tazz Trade Dress. Deckers spends millions of dollars annually on advertising of UGG® products, including footwear embodying the Tazz Trade Dress.

54. Due to its long use, extensive sales, and significant advertising and promotional activities, Deckers' Tazz Trade Dress has achieved widespread acceptance and recognition among the consuming public and trade throughout the United States. Indeed, Deckers has sold millions of dollars' worth of the UGG® Tazz, the embodiment of the Tazz Trade Dress. Accordingly, the Tazz Trade Dress has achieved a high degree of consumer recognition and secondary meaning, which serves to identify Deckers as the exclusive source of footwear featuring said trade dress.

55. Upon information and belief, Defendant is a competitor of Deckers and introduced the Accused Products into the stream of commerce in an effort to exploit Deckers' goodwill and the reputation of the UGG® Tazz.

56. The Accused Products manufactured, imported, distributed, advertised, offered for sale, and/or sold by Defendant bears confusingly similar reproductions of the Tazz Trade Dress, such as to cause a likelihood of confusion as to the source, sponsorship or approval by Deckers of the Accused Products.

57. Defendant's use of the Tazz Trade Dress is without Deckers' permission or authorization, and in total disregard of Deckers' rights to control its intellectual property. There are numerous other shoe designs in the footwear industry, none of

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

which necessitate copying or imitating the Tazz Trade Dress.

58.     Defendant's use of the Tazz Trade Dress is likely to lead to and result in confusion, mistake, or deception, and is likely to cause the public to believe that Accused Products are produced, sponsored, authorized, or licensed by or are otherwise connected or affiliated with Deckers.

59.     As a direct and proximate result of the foregoing acts, Deckers has suffered and will continue to suffer significant injuries in an amount to be determined at trial. Deckers is entitled to recover all damages, including attorneys' fees, that it has sustained and will sustain, and all gains, profits and advantages obtained by Defendant because of its infringing acts.

60.     Furthermore, unless Defendant's unlawful acts are enjoined by this Court, there is no adequate remedy at law that can fully compensate Deckers for the harm caused by Defendant's infringement, which is ongoing. Accordingly, Deckers is entitled to injunctive relief prohibiting Defendant from continuing to infringe the Tazz Trade Dress, or any designs confusingly similar thereto.

## **FOURTH CLAIM FOR RELIEF**

### **(Trade Dress Infringement of the Classic Ultra Mini Trade Dress – 15 U.S.C. § 1125(a))**

61.     Deckers incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

62.     In 2020, Deckers introduced the UGG® Classic Ultra Mini, marketed and featuring the design elements protected under the "Classic Ultra Mini Trade Dress." The Classic Ultra Mini Trade Dress is unique and inherently distinctive, and comprised of the following non-functional elements:

    a.     An ankle-high boot;

    b.     Classic suede boot styling;

    c.     An exaggerated, raised and exposed circular stitch pattern;

    d.     Exposed tufting;

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

e. A raised and rounded vamp;

f. A suede heel overlay on the boots exterior;

g. Fabric binding along the top of the boot and along the sole;

h. A thick, flat sole; and

i. A top line that is higher in the front and lower in the back.

63. The Classic Ultra Mini Trade Dress, which is a composite of the above-referenced features, is non-functional in its entirety, visually distinctive, and unique in the footwear industry; examples of its distinctive appearance as a whole are shown in the photographs below:



64. The design of the Classic Ultra Mini Trade Dress is neither essential to its use or purpose, nor does it affect the cost or quality of the shoe. There are numerous other designs available that are equally feasible and efficient, none of which necessitate copying or imitating the Classic Ultra Mini Trade Dress. The combination of features comprising the Classic Ultra Mini Trade Dress provides no cost advantages to the manufacturer or utilitarian advantages to the consumer. These features, in combination, serve only to render the UGG® Classic Ultra Mini, the embodiment of the Classic Ultra Mini Trade Dress, as a distinct product originating solely from Deckers.

65. The UGG® Classic Ultra Mini, the embodiment of the Classic Ultra Mini Trade Dress, is one of the most well-recognized and commercially successful styles of UGG® brand of footwear products, having been featured in many of Deckers' advertising and promotional materials as well as in various trade publications. The UGG® Classic Ultra Mini has received a large volume of unsolicited media attention,

for example, through various celebrities seen wearing the UGG® Classic Ultra Mini and graced the pages of many popular magazines nationwide and internationally.

66. Deckers has spent substantial time, effort, and money in designing, developing, advertising, promoting, and marketing the UGG® brand and its line of footwear embodying the Classic Ultra Mini Trade Dress. Deckers spends millions of dollars annually on advertising of UGG® products, including footwear embodying the Classic Ultra Mini Trade Dress.

67. Due to its long use, extensive sales, and significant advertising and promotional activities, Deckers' Classic Ultra Mini Trade Dress has achieved widespread acceptance and recognition among the consuming public and trade throughout the United States. Indeed, Deckers has sold millions of dollars' worth of UGG® Classic Ultra Mini boots, the embodiment of the Classic Ultra Mini Trade Dress. Accordingly, the Classic Ultra Mini Trade Dress has achieved a high degree of consumer recognition and secondary meaning, which serves to identify Deckers as the exclusive source of footwear featuring said trade dress.

68. Upon information and belief, Defendant is a competitor of Deckers and Defendant introduced Accused Products into the stream of commerce in an effort to exploit Deckers' goodwill and the reputation of the UGG® Classic Ultra Mini.

69. The Accused Products manufactured, imported, distributed, advertised, offered for sale, and/or sold by Defendant bear confusingly similar reproductions of the Classic Ultra Mini Trade Dress, such as to cause a likelihood of confusion as to the source, sponsorship or approval by Deckers of the Accused Products.

70. Defendant's use of the Classic Ultra Mini Trade Dress is without Deckers' permission or authorization, and in total disregard of Deckers' rights to control its intellectual property. There are numerous other shoe designs in the footwear industry, none of which necessitate copying or imitating the Classic Ultra Mini Trade Dress.

71. Defendant's use of the Classic Ultra Mini Trade Dress is likely to lead to and result in confusion, mistake, or deception, and is likely to cause the public to believe

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

that Accused Products are produced, sponsored, authorized, or licensed by or are otherwise connected or affiliated with Deckers.

72. As a direct and proximate result of the foregoing acts, Deckers has suffered and will continue to suffer significant injuries in an amount to be determined at trial. Deckers is entitled to recover all damages, including attorneys' fees, that it has sustained and will sustain, and all gains, profits and advantages obtained by Defendant as a result of its infringing acts.

73. Furthermore, unless Defendant's unlawful acts are enjoined by this Court, there is no adequate remedy at law that can fully compensate Deckers for the harm caused by Defendant's infringement, which is ongoing. Accordingly, Deckers is entitled to injunctive relief prohibiting Defendant from continuing to infringe the Classic Ultra Mini Trade Dress, or any designs confusingly similar thereto

## FIFTH CLAIM FOR RELIEF

### (Trade Dress Infringement – California Common Law)

74. Deckers incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

75. Defendant's infringement of the Tazz Trade Dress and Classic Ultra Mini Trade Dress also constitutes trade dress infringement under common law of the state of California.

76. The Accused Products manufactured, imported, distributed, advertised, offered for sale, and/or sold by Defendant bears confusingly similar reproductions of the Tazz Trade Dress and Classic Ultra Mini Trade Dress, such as to cause a likelihood of confusion as to the source, sponsorship or approval by Deckers of the Accused Products. Defendant's unauthorized use of the Tazz Trade Dress and Classic Ultra Mini Trade Dress has caused and is likely to cause confusion as to the source of the Accused Products among consumers.

77. As a direct and proximate result of the foregoing acts, Deckers has suffered and will continue to suffer significant injuries in an amount to be determined at trial.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Deckers is entitled to recover all damages, including attorneys' fees, that it has sustained on account of Defendant's infringement, and all gains, profits and advantages obtained by Defendant because of its unlawful acts.

78.     Defendant's unlawful acts were willful, deliberate, and intended to cause confusion among the public, taken in reckless disregard of Deckers' rights. As such, an award of exemplary and punitive damages is necessary in an amount sufficient to deter similar misconduct in the future.

79.     Furthermore, unless Defendant's unlawful acts are enjoined by this Court, there is no adequate remedy at law that can fully compensate Deckers for the damages caused by Defendant's infringement, which is ongoing. Accordingly, Deckers is entitled to injunctive relief prohibiting Defendant from continuing to infringe the Tazz Trade Dress and Classic Ultra Mini Trade Dress, or any designs confusingly similar thereto.

## <u>SIXTH CLAIM FOR RELIEF</u>

**(Unfair Competition in Violation of Cal. Bus. & Prof. Code, § 17200 *et. seq.*)**

80.     Deckers incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

81.     Defendant's misappropriation and unauthorized use of the Tazz Trade Dress and Classic Ultra Mini Trade Dress to promote the Accused Products is likely to confuse or mislead consumers into believing that such products are authorized, licensed, affiliated, sponsored, and/or approved by Deckers, constituting deceptive, unfair, and fraudulent business practices and unfair competition in violation of the California Unfair Business Practices Act, Cal. Bus. & Prof. Code, § 17200 *et. seq.*

82.     Upon information and belief, Defendant's deceptive, unfair, and fraudulent business practices were willfully undertaken with full knowledge of the Tazz Trade Dress and Classic Ultra Mini Trade Dress and with the intent to misappropriate Deckers' goodwill and reputation established in the UGG® Tazz and UGG® Classic Ultra Mini.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

83.    As a direct and proximate result of the foregoing acts, Deckers has suffered and will continue to suffer significant injuries in an amount to be determined at trial. Deckers is entitled to all available relief provided for under the California Unfair Business Practices Act, Cal. Bus. & Prof. Code, § 17200 *et. seq.*, including an accounting and disgorgement of all illicit profits that Defendant made on account of its deceptive, unfair, and fraudulent business practices.  Furthermore, because Deckers has no adequate remedy at law for Defendant's ongoing unlawful conduct, Deckers is entitled to injunctive relief prohibiting Defendant from unfair competition.

<u>**SEVENTH CLAIM FOR RELIEF**</u>

**(Unfair Competition – California Common Law)**

84.    Deckers incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

85.    Defendant's misappropriation and unauthorized use of the Tazz Trade Dress to promote the Accused Products also constitutes unfair competition in violation of common law of the state of California.

86.    Deckers has expended substantial time, resources and effort in creating and developing UGG® footwear, including the UGG® Tazz, the embodiment of the Tazz Trade Dress, and the UGG® Classic Ultra Mini, the embodiment of the Classic Ultra Mini Trade Dress, which consumers recognize as originating from Deckers.

87.    Upon information and belief, Defendant introduced the Accused Products into the stream of commerce in order to exploit Deckers' goodwill and the reputation established in the UGG® Tazz and UGG® Classic Ultra Mini for Defendant's own pecuniary gain.  Defendant's unauthorized use of the Tazz Trade Dress and Classic Ultra Mini Trade Dress resulted in Defendant unfairly benefitting from Deckers' goodwill and the reputation established in the UGG® Tazz and UGG® Classic Ultra Mini.

88.    Upon information and belief, Defendant's unlawful acts are willful, deliberate, and intended to cause confusion among the public and taken in reckless

disregard of Deckers' rights. As such, an award of exemplary and punitive damages is necessary in an amount sufficient to deter similar misconduct in the future.

89. As a direct and proximate result of the foregoing acts, Deckers has suffered and will continue to suffer significant injuries in an amount to be determined at trial. Deckers is entitled to recover all damages, including attorneys' fees, that Deckers has sustained on account of Defendant's unfair competition, and all gains, profits and advantages obtained by Defendant as a result of its unlawful acts. Furthermore, because Deckers has no adequate remedy at law for Defendant's ongoing unlawful conduct, Deckers is entitled to injunctive relief prohibiting Defendant from unfair competition.

## EIGHTH CLAIM FOR RELIEF

### (Patent Infringement – U.S. Pat. No. D927,161)

90. Deckers incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

91. In order to protect its valuable brands, Deckers owns a number of patents covering various styles of footwear it markets, including the UGG® Classic Ultra Mini described herein. These patents include U.S. Pat. No. D927,161 issued on August 10, 2021, a true and correct copy of which is attached hereto as **Exhibit 2** and incorporated herein.

92. Deckers is the owner by assignment of all rights, title and interest in and to the '161 Patent issued in August 2021. Deckers marked substantially all footwear products embodying the design of the '161 Patent with "Patent # D927,161", and/or via virtual patent marking on a product label affixed to the footwear products embodying the design of the '161 Patent in compliance with 35 U.S.C. § 287, as exemplified below, putting Defendant on notice of the '161 Patent.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF



93.     Defendant has produced, imported into the U.S., distributed, advertised, marketed, offered for sale, and/or sold within the United States the Accused Products which bear a design substantially similar to the ornamental design of the '161 Patent, in violation of 35 U.S.C. § 271.

94.     Deckers has not granted a license or given Defendant any form of permission to the '161 Patent and Defendant's infringement of the '161 Patent is without Deckers' permission or authority and in total disregard of Deckers' intellectual property rights.

95.     As a direct and proximate result of the foregoing acts, Deckers has suffered and will continue to suffer significant injuries in an amount to be determined at trial.  Deckers is entitled to recover all damages sustained on account of Defendant's infringement, and all gains, profits and advantages obtained by Defendant under 35 U.S.C. §§ 284 and 289.

96.     Upon information and belief, Defendant's infringing acts were willful deliberate, and taken in reckless disregard of the '161 Patent despite having been put on

notice through Deckers' patent marking. Defendant took these actions knowing the objectively high likelihood that such actions constituted infringement of the '161 Patent. As Defendant's willful acts render this an exceptional case, Deckers is entitled to enhanced damages and reasonable attorney fees under 35 U.S.C. § 284.

97.    Furthermore, unless Defendant's unlawful acts are enjoined by this Court, there is no adequate remedy at law that can fully compensate Deckers for the harm caused by Defendant's infringement of the '161 Patent, which is ongoing. Accordingly, Deckers is entitled to injunctive relief under 35 U.S.C. § 283 prohibiting Defendant from continuing to infringe the '161 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Deckers Outdoor Corporation respectfully prays for judgment against Defendant Stand Out For Good, Inc. and DOES 1-10 as follows:

1.    A judgment that Defendant infringed Deckers' Tazz Trade Dress, Classic Ultra Mini Trade Dress, '161 Patent, and the UGG Mark;

2.    An order permanently enjoining and restraining Defendant, its agents, servants, employees, officers, associates, and all persons acting in concert with any of them from infringing Deckers' intellectual property at issue, including but not limited to infringing acts such as:

a.    manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling Accused Products or any other products that bear an identical or confusingly similar design as Deckers' Tazz Trade Dress;

b.    manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling Accused Products or any other products that bear an identical or confusingly similar design as Deckers' Classic Ultra Mini Trade Dress

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

c. manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling Accused Products or any other products that infringe the '161 Patent;

d. manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling products that bear the UGG Mark or an identical or confusingly similar design as thereto;

e. engaging in any other activity constituting unfair competition with Deckers, or acts and practices that deceive consumers, the public, and/or trade, including without limitation, the use of designations and design elements used or owned by or associated with Deckers;

f. engaging in any other activity that will dilute the distinctiveness of the UGG Mark; and

g. committing any other act which falsely represents or which has the effect of falsely representing goods and services of Defendant are licensed, authorized, offered, produced, sponsored, or in any other way associated with Deckers.

3. An order requiring Defendant to recall from any distributors and retailers and to deliver to Deckers for destruction any Accused Products, including the means of making such products;

4. An order requiring Defendant to file with this Court and serve on Deckers within thirty (30) days after entry of the injunction, a report in writing and under oath setting forth the manner in which Defendant complied with the injunction;

5. An order for an accounting of all gains, profits and advantages derived by Defendant on account of the unlawful acts complained of herein pursuant to 15 U.S.C. § 1117(a), Cal. Bus. & Prof. Code, § 17200 *et. seq*., and any other applicable federal statute or California state and common law;

6. An award of damages equal to Defendant's profits and all damages sustained by Deckers as a result of Defendant's wrongful acts;

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

1    7.    An award of damages equal to treble Defendant's profits or Deckers'
2 damages, whichever is greater, on account of Defendant's willful infringement;

3    8.    An award of punitive damages and Deckers' costs, attorneys' fees, and
4 interest as allowed under all applicable federal statutes and California state laws; and

5    9.    All other relief that the Court may deem just and proper.

6

7 Dated:        December 18, 2024    **BLAKELY LAW GROUP**

8

9                                By:    ___/s/__ Jamie Fountain
10                                      Brent H. Blakely
                                        Jamie Fountain
11                                      Iain Hill
                                        **Attorneys for Plaintiff**
12                                      **Deckers Outdoor Corporation**

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Deckers Outdoor Corporation hereby demands a trial by jury as to all claims in this Civil Action.

Dated:      December 18, 2024    **BLAKELY LAW GROUP**

                                     By:     _/s// Jamie Fountain_
                                                 Brent H. Blakely
                                                   Jamie Fountain
                                                   Iain Hill
                                                 **Attorneys for Plaintiff**
                                                 **Deckers Outdoor Corporation**